[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I
The plaintiff wife, 48, whose birth name is Hall, and the defendant husband, 48, married on May 29, 1971 in Scarborough, New York. They both have resided continuously in Connecticut for over one year prior to the service of the writ and complaint on April 7, 1995, with a return date of May 2, 1995, thereby affording this court jurisdiction. There are three minor children issue of the marriage, Alexander Hall Duncan, Christopher Hall Duncan, and CT Page 4345 Bradford Hall Duncan, all born on May 24, 1985. No other child has been born to the plaintiff since the marriage, nor has the State of Connecticut ever advanced any assistance. The court finds that the marriage has broken down irretrievably.
Child custody was in dispute and the case was claimed for the contested trial list. Attorney Ellen Wells was appointed counsel for the minors in June, 1995. In October, 1995, the court appointed S.P. Herman, M.D. to evaluate the parties and the children. The case was thereafter transferred to the Middletown Regional Family Docket for trial of the custody issues.
By stipulation dated July 24, 1996 the parties agreed to joint legal custody with primary physical custody with the defendant. The plaintiff's time with the children is every Monday from 6:00 p. m. until the following morning, every other weekend from 6:00 p. m. Friday until Tuesday morning and every fourth week from Sunday 6:00 p. m. until Tuesday morning. Holidays, special occasions, vacations and school breaks are all dealt with in detail. The stipulation was presented to and approved by the court (Steinberg, J.) who then transferred the file back to Stamford for trial of the remaining issues.
Trial before this court commenced on January 9, 1997. After several trial days the court heard final argument and took the papers on February 13, 1997.
A child support order was not entered when the custody stipulation was approved. Because the parties' combined net available weekly income exceeds the maximum guideline figure, the child support guidelines do not apply. Therefore, both the plaintiff's claim that she should receive such a payment and the defendant's claim that he should receive a payment by extrapolation are both equally contrary to the applicable law. The plaintiff's visitation schedule is so extensive that the children spend about 30% of their time with her. Although the stipulation provides that the primary residence is with the father, the court has concluded that it is, in fact, a shared custody arrangement requiring no payment of child support by either parent.
The defendant requests time limited alimony. The court finds that the defendant has a much greater earning capacity as well as a greater ability to acquire assets in the future. In view of the length of the marriage, whether it now is viewed as an unhappy one or not, the court finds no basis for a term limitation and will CT Page 4346 order periodic alimony of an indefinite length.
 II
Both parties were college graduates when they married. Shortly thereafter they moved to the Chicago area in order to permit the defendant to obtain an M.B. Ed. degree from the University of Chicago. The defendant had obtained an M.A. degree in Fine Arts from N.Y.U. The plaintiff obtained employment with the Encyclopedia Britannica as its fine arts editor.
After completing his courses, the defendant completed the program with honors in eighteen months. The parties then moved to Fairport, New York, a suburb of Rochester where the defendant began his career as a financial analyst for Xerox Corporation. On April 2, 1993 the plaintiff obtained teaching jobs at two local universities while the defendant attended the program.
During the Rochester years the plaintiff had some health problems resulting in two operations. During these years the parties were also experiencing marital discord. The court further notes that, prior to the birth of the triplets, the plaintiff had two pregnancies, each resulting in a miscarriage despite her remaining on bed rest for over four months.
They purchased their first house in 1975 which was sold after the defendant was transferred to Connecticut in 1979 to Xerox Corporate headquarters. The plaintiff obtained a Smithsonian Fellowship and also did freelance work after coming to Connecticut
Over the course of their marriage, the parties engaged in counselling over several periods of time. It has been necessary for the children to have therapy.
In 1979 the plaintiff's book on fashion photography was published, (Defendant's Exhibit A). In assembling the photos, the plaintiff acquired a total of approximately one thousand prints, many of them originals. She also has an extensive stereo views card collection which the defendant helped to amass.
Both parties have been avid collectors throughout the marriage and the court conducted several hearings in order to award the various items of tangible personal property.
The various rulings made during the hearings are all CT Page 4347 incorporated herein by reference.
The plaintiff obtained employment by the Bruce Museum, Greenwich where she has remained for the past eleven years as Curator of Art, responsible for 18 exhibitions annually and personally running eight to twelve. She earns $3,784 gross monthly and net taxes and insurance premiums $2,453 monthly. The court notes that the plaintiff returned to work seven months post partum.
The defining episode of the marriage breakdown occurred on the weekend prior to Thanksgiving, 1993 when the defendant physically accosted the plaintiff while she was doing dishes. Although the parties' versions vary widely, the court infers that an improper shoving of plaintiff by defendant occurred. The police responded, arrested the defendant who refused to post bail and elected to spend two nights in jail. It was the culmination of a decade of friction between the parties. The court believes no useful purpose is served to enumerate the earlier difficulties. Each had suggested separating prior to 1993.
The defendant's career at Xerox continues to prosper. The court notes that the parties' relocations supported the advancement of his job. For example, the parties' move to Chicago shortly after the marriage forced the plaintiff to abandon her efforts to complete her Ph.D. but enabling the defendant to obtain his master's degree.
Currently, the defendant lists his position as a finance manager earning a base income of $9,073 gross and net after taxes and insurance premiums of $6,024 monthly, as listed on his January 9, 1997 financial affidavit. His title is Manager of Financial Development Training. In addition, he lists five types of additional compensation totaling $5,185 gross monthly and net taxes of $3,108 monthly. The bulk of these additional payments are awarded and paid on or about February of each year.
The defendant participates in the Xerox Long-Term Incentive Plan for stock options and performance units. Effective January 2, 1997 he had been given the following option awards:
Date Shares Vested Expire Option Price __________________________________________________________________________ 1/28/94 1950 1950 12/31/98 32.4375 2/28/95 1800 1800 12/31/99 36.5625 2/19/96 1200 396 12/31/03 43.8125 CT Page 4348
The remaining 1996 options will vest and become exercisable as follows: 396 on 1/1/98 and 408 on 1/1/99. The statement furnished the defendant estimated gain to date of $90,400 based on a market price of $55. (Plaintiff's Exhibit #2).
The plaintiff has been awarded performance units, which vest in equal parts over three years:
 Date Shares Value _________________________________________________ 2/1/94 650 $ 9,220 2/1/95 600 22,000 2/1/96 400 not yet valued 2/1/97 (in process)
This summary is based on testimony of the Xerox Manager, Human Resources, Corporate Staff, Patricia Pia.
In 1996 the defendant was paid a bonus of $26,745.
The defendant has $288,556 in his profit sharing account.
The defendant has a defined benefit pension plan having a present value as of November 30, 1996 of $275,889. The defendant actually has two accounts, one known as a transitional account and a second one known as a cash balance account. When the defendant retires his pension will be based on only one of these accounts, the greater in value at that time. Currently, the defendant's cash account contains $237,231.47. Both accounts serve the purpose of funding his defined benefit.
The defendant participates in a program that is a combination of cash value and term insurance with current fact value of $300,000 benefit, the first $50,000 written by Metropolitan and the balance written by Prudential.
The plaintiff has a pension at the Bruce Museum currently valued at $13,787.24 (Defendant's Exhibit D) and an IRA valued at $26,636. (Defendant's Exhibit E).
Each party has inherited or been given assets by their mothers. The defendant and his siblings are the owners of property given by his mother but which is currently used for the mother's maintenance. The court makes no order as to the condo unit or CT Page 4349 other assets identified as such on the defendant's financial affidavit. The court will make no order regarding the funds the plaintiff inherited from her mother now totaling $103,742 and invested in five mutual funds as well as a remainder in interest in a Kansas farm. The plaintiff inherited $93,143 in 1990.
There are several collections of "collectibles" as well as books and tangibles beyond what was dealt with during the trial. In order to complete the separation of tangibles, the court will keep jurisdiction for motions to articulate or clarify the orders being entered as well as for purposes of entering a QDRO or other order to effect the reallocation of deferred compensation.
The plaintiff has purchased a residence for herself at 1 Eric Court, Norwalk paying $285,000 by utilizing $115,000 drawn from the Vanguard Fund and mortgaging the $170,000 balance. The monthly payments are $1,292 plus $264 taxes monthly.
The marital home, now occupied by the defendant, has a fair market value of $355,000 and is subject to a mortgage of $36,500 and is currently owned jointly by the parties.
Having reviewed the evidence in light of the applicable statutes and case law, as well as having considered the arguments and briefs of the attorneys, the court enters the following decree.
1. Judgment is entered dissolving the parties' marriage on the ground of irretrievable breakdown, the court finding all of the allegations of the complaint proven and true.
2. The parties' Stipulation dated July 25, 1996 is incorporated herein as a court order. No child support payment is ordered.
3. The defendant shall continue to insure the children through his employer's medical plan, and he shall pay 70% of any unreimbursed medical expenses incurred for the health care for the children and the plaintiff shall pay 30% upon receiving appropriate documentation from the defendant.
4. The defendant shall maintain the children as primary beneficiaries on his Xerox life insurance during their minority or until high school graduation if any are still attending high school upon obtaining majority. CT Page 4350
5. The defendant shall pay to the plaintiff, as periodic alimony, the sum of $2,500 monthly, until the death of either party, the plaintiff's remarriage, or further court orders.[1] A contingent wage withholding order is entered pursuant to statute. As additional periodic alimony he shall pay to plaintiff, within seven days of receipt by him, 30% of his annual bonus net after taxes. This order applies to the bonus paid in 1997 and subsequent years.
6. The plaintiff's interest in 8 Morgan Avenue is ordered transferred to the defendant. If not completed in 30 days by a quit-claim deed prepared and entered by the plaintiff to the defendant, the transfer may be effected by applicable statute. The defendant shall then request a novation of the mortgage holder releasing the plaintiff from the mortgage note. If the defendant is unable to obtain same by June 30, 1997, he shall refinance the mortgage, or simply pay it off in full. The plaintiff's proposal that the transfer be treated as a "sale" for tax purposes is beyond the court's authority but can be done by agreement of the parties for tax planning purposes.
7. The plaintiff is awarded the entire collection of photographs,[2] her publications, work product pertaining to her writings and editing work, and her doll collection.
8. The defendant is awarded the baseball card collection, the toy soldier collection, the rare book collection and the postcard collection.
9. The division of the tangible items which were the subjects of a lengthy hearing regarding division of same between the parties, is incorporated herein and made part of the judgment. If necessary, a transcript will be made Appendix A.
10. The party now in physical possession of the stereo cards shall divide the collection into two equal parts, labeled A and B, and the plaintiff shall have first choice to pick one part. The other part shall then become the property of the defendant. The division and selection is to be completed by June 1, 1997.
11. The plaintiff is awarded 50% of the defendant's pension as the same exists on the date this judgment is entered.
12. The plaintiff is awarded 50% of the profit to be realized by the defendant from the exercise of his vested stock options. CT Page 4351 Payment to the plaintiff is to be made immediately upon exercise. The plaintiff shall be entitled to payment as ordered in the event the defendant fails to exercise any options by calculating the profit using the closing market price of the last day prior to lapse.
13. The plaintiff is awarded 50% of the defendant's performance units vested to date of the judgment by payment to her of the value of such share.
14. The plaintiff is awarded 105 shares of Xerox stock being half of the defendant's ESOP. The defendant shall deliver a stock certificate to plaintiff representing said shares.
15. The plaintiff shall retain her new home, her Bruce Museum pension valued at $13,787 currently, her jewelry, and the Acura auto as solely hers.
16. The defendant shall retain the Plymouth Voyager, his Buick Electra as solely his.
17. The plaintiff shall retain as her sole property all of the mutual funds now in her sole name, including her IRA, as the same are listed on her financial affidavit of January, 1997:
 Fidelity Magellan IRA $ 24,917.43 Fidelity Spartan CT Bond 146,711.39 Vangaard 16,668.46 T. Rowe Price 37,187.75 Fidelity Principal Bond 46,950.90 Phoenix 22,908.30 Fidelity Utilities 20,436.41 So Gen. International 17,578.90 Franklin Gold 7,965.57 ----------- Total $302,646.64
Included in this total is the $93,143 inherited from her mother.
18. The defendant shall retain his IRA listed by him as $48,329 on his affidavit.
19. The defendant's profit sharing savings account at Xerox contained $288,556 as of November 30, 1996 of which $137,000 is awarded to the plaintiff. This order assumes the transfer to be a CT Page 4352 non-taxable event.
20. The pendente lite injunction is terminated.
21. Each party shall pay their respective debts.
22. The plaintiff is awarded an allowance to prosecute of $20,000, payable in 90 days so the other financial orders are not undermined.
23. The unpaid bill balance due the attorney for the minors shall be paid by equal contribution from each party, payable in 30 days.
Counsel for the plaintiff is directed to prepare the judgment file.
HARRIGAN, J.